**F.D.S. MARINE, LLC, Plaintiff,**

v.

**BRIX MARITIME CO., dba FOSS MARITIME CO., Defendant.**

No. CV–00–1245–ST.

United States District Court, D. Oregon.

July 13, 2001.

Timothy Wayne Grabe, Portland, OR, for plaintiff.

James W. Talbot, Stafford Frey Cooper, Seattle, WA, for defendant.

## OPINION

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

FDS Marine, LLC ("FDS Marine") originally brought this lawsuit against Shaver Transportation Co. ("Shaver"), Brix Mari-

time Towing, Inc., Brix Maritime Co., Marine Equipment Leasing Co., and Brix Rafting & Sorting Co. dba Foss Maritime Co. ("Foss ") to recover for work it performed for Shaver and Foss between November 19 and December 19, 1999.

The Third Amended Complaint alleges a maritime salvage claim against Shaver (First Claim for Relief), a *quantum meruit* claim against Shaver (Second Claim for Relief), and a *quantum meruit* claim against Foss (Third Claim for Relief). FDS Marine's first two claims for relief were dismissed, leaving only the *quantum meruit* claim against Foss (dockets # 87 & # 98). Accordingly, the only remaining defendant is Foss (docket # 118). Foss' Unfair Trade Practices Act ("UTPA") counterclaim against FDS Marine also was dismissed, leaving Foss with counterclaims against FDS Marine for breach of contract, breach of implied warranties, negligence, and fraud (dockets # 79 & # 98).

This court had federal question jurisdiction over FDS Marine's salvage claim against Shaver under 28 USC § 1331 and supplemental jurisdiction over the state law claims under 28 USC § 1367. As stated above, however, the salvage claim was dismissed. When "the district court has dismissed all claims over which it has original jurisdiction," it has discretion to "decline to exercise" supplemental jurisdiction. 28 USC § 1367(c)(3); *Brady v. Brown,* 51 F.3d 810, 815 (9th Cir. 1995). The court should remand the case unless retention of the case is justified by judicial economy, convenience, and fairness to the litigants. *Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California,* 24 F.3d 1545, 1564 (9th Cir.1994). Here, all of the above factors clearly favor retention of the case. Therefore, this court will maintain jurisdiction over the *quantum meruit* claim against Foss and Foss' counterclaims against FDS Marine.

Now pending are FDS Marine's Motion to Strike Megan Wells' Expert Disclosure (docket # 110), Foss' Motion to Strike Plaintiff's Expert Witnesses and Disclosure Statements (docket # 105), and Foss' Motion for Continuance of the Expert Witness Disclosure Deadline (docket # 103). For the reasons set forth below, FDS Marine's motion to strike (docket # 110) is denied, Foss' motion to strike (docket # 105) is granted in part and denied in part, and Foss' motion for a continuance (docket # 103) is granted.

## BACKGROUND

Shaver is the owner and operator of a tugboat named DESCHUTES. In November 1999, Foss, which operates a shipyard on the Columbia River in Rainier, Oregon, hauled the DESCHUTES out of the water in order to conduct needed repairs. At this shipyard, vessels are hauled out of the water by means of a marine railway system, referred to as "ways." The ways consist of several steel rails mounted on large timbers or pilings. The timbers are supported by cross-timbers mounted on pilings driven into the river bottom. To raise a vessel, Foss lowers a large cradle down the rails and into the water. Foss' employees then secure the vessel to the cradle and haul both out of the water with a powerful hydraulic winch. The vessel typically remains on the cradle above the high-water mark while repairs are performed.

On November 19, 1999, Foss finished repairs on the DESCHUTES and attempted to launch the vessel but the cradle supporting the vessel became stuck on the ways and the vessel could not be launched. Foss left the cradle in place and contacted FDS Marine to inspect the ways.

FDS Marine has no permanent employees but is run by the two shareholders, Fred and Cherie Stambaugh, husband and wife. Fred Stambaugh ("Stambaugh") arrived at the Foss shipyard on November 19, 1999, and determined that the ways were in need of repairs. Stambaugh and Foss then orally agreed that FDS Marine would undertake to repair the ways so that the DESCHUTES could be launched. The DESCHUTES was successfully launched on December 12, 1999.

On February 18, 2000, FDS Marine submitted an invoice for $400,411.08 to Foss for its repair services to the ways. Foss eventually paid FDS Marine $50,000.00, but refused to pay the rest of the invoice, alleging substantial inconsistencies in the billing. In re-

sponse, FDS Marine filed suit for damages against both Foss and Shaver.

## DISCUSSION

FDS Marine seeks to strike Foss' January 15, 2001 and June 14, 2001 expert disclosure statements. At the same time, Foss seeks to strike all six of FDS Marine's experts and their respective disclosure statements and also seeks a continuance of the expert witness disclosure deadline.

## I. Expert Disclosure Statements

### A. Legal Standard

Federal Rule of Civil Procedure ("FRCP") 26(a)(2) provides that a party must disclose to other parties "the identity of all expert witnesses who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." FRCP 26(a)(2)(B) further adds that:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Lastly, FRCP 26(a)(2)(C) provides that:

> These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date

the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party.

Parties who run afoul of FRCP 26 may face sanctions as specified in FRCP 37(c)(1). FRCP 37 provides that a party failing to make disclosures or to supplement responses as required by FRCP 26(a), "unless such failure is harmless," may not use as evidence any witness or information not so disclosed. FRCP 37(c)(1). Generally "[t]he sanction of exclusion is ... automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996).

### B. Analysis

#### 1. FDS Marine's Motion to Strike

FDS Marine argues that Foss' January 15, 2001 tentative and preliminary "Observations and Analyses," by Tucker Alan, Inc., should be dismissed for failure to comply with FRCP 26(a)(2) because it is not signed and fails to include a description of the expert's opinions, exhibits, qualifications, compensation, and prior expert testimony. Also, FDS Marine argues that the June 14, 2001 report by Foss' expert, Megan Wells ("Wells"), should be stricken because it: (1) fails to satisfy FRCP 26(a)(2); (2) was late; and (3) purports to provide a legal conclusion.

#### a. Incomplete Disclosure

As FDS Marine points out, the January 15, 2001 "Observations and Analyses" report fails to comply with the requirements of FRCP 26(a)(2)(B) because it is not signed, does not contain the expert's qualifications or compensation, or a listing of prior expert testimony. Similarly, Wells' June 14, 2001 report, although signed, fails to provide all the information required by FRCP 26(a)(2)(B). Thus, the only question is the sanction which this court should impose against Foss for a violation of FRCP 26.

As stated above, FRCP 37(c)(1) contemplates that a party who fails to provide disclosures cannot use as evidence any witness or information not so disclosed, unless the failure to disclose is harmless. FRCP 37(c)(1). "If full compliance with Rule 26(a) and 26(e)(1) is not made, Rule 37(c)(1) mandates some sanction, the degree and severity of which are within the discretion of the trial judge." *Keener v. United States,* 181 F.R.D. 639, 641 (D.Mont.1998). In *Keener,* the court considered a five-part test in determining whether to exclude expert testimony for violating FRCP 26:(1) the public's interest in expeditious resolution; (2) a court's need to manage its docket; (3) risk of prejudice to the defendants; (4) public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Id,* citing *Wendt v. Host Intern., Inc.,* 125 F.3d 806, 814 (9th Cir.1997).

Here, all of the above factors favor leniency. In *Keener,* the defendant missed the disclosure deadline by three months "with regard to providing other cases in which [the expert] has testified" but the court found that "standing alone, this would not be sufficient to prevent [the expert] from testifying. This is so because the history of his prior testimony is available to the plaintiff in sufficient time to allow preparation for meaningful cross-examination perhaps using his prior testimony as a basis for impeachment." *Keener,* 181 F.R.D. at 640. Similarly, in this case, FDS Marine has not yet suffered any prejudice by Foss' failure to provide all of the information concerning its experts as required by FRCP 26. It still has more than two months before trial on September 24, 2001, to prepare for examination of Foss' expert.

#### b. *Timeliness*

Foss clarified at oral argument that Wells' prepared the January 15, 2001, "Observations and Analysis" and that her June 14, 2001, report is a rebuttal report to the disclosure by FDS Marine's expert, Erin Evers ("Evers"). The deadline for rebuttal expert disclosures was June 14, 2001. Therefore, Wells' June 14, 2001, report was timely disclosed.

#### c. *Legal Opinion*

Contrary to FDS Marine's contention, Wells' June 14, 2001, report does not contain an inadmissible legal opinion. Wells, a certified public accountant, opines that FDS Marine has destroyed the majority of its actual time cards which is a breach of the standard of care in the industry for recordkeeping. As a result, she cannot verify FDS Marine's bill to Foss. Combined with inconsistencies in FDS Marine's existing records, she concludes that FDS Marine's bill intentionally misrepresents the number of actual hours incurred. To the extent that Wells disputes the validity of FDS Marine's bill, her opinion is admissible. However, to the extent that she characterizes the discrepancies as an intentional misrepresentation, this court agrees that she invades the province of the jury to determine if the factual discrepancies lead to that legal conclusion. Therefore, this court strikes only that portion of Well's opinion that FDS Marine's bill is an "intentional misrepresentation."

#### d. *Conclusion*

FDS Marine's Motion to Strike is denied. By July 22, 2001, Foss shall provide the remaining information required by FRCP 26 to complete the January 15, 2001 "Observations and Analyses" report and Wells' June 14, 2001 rebuttal expert disclosure. In addition, Wells is precluded from testifying that FDS Marine's bill to Foss is an "intentional misrepresentation." FDS Marine may file a rebuttal expert disclosure to Wells on or before August 1, 2001.

#### 2. *Foss' Motion to Strike*

Foss' motion seeks to exclude all of FDS Marine's expert witnesses and, if they are permitted to testify, to limit the scope of their testimony. As FDS Marine points out, this court's April 9, 2001 Minute Order does not require the filing of motions in limine until August 17, 2001, with responses due August 31, 2001. Nevertheless, in the interest of economy, this court will address Foss' motion in its entirety at this time.

### a. *Dixie Stambaugh*

■ Foss argues that Dixie Stambaugh should not be allowed to testify as an expert witness and her expert disclosure statement should be stricken because she was not previously disclosed as an expert. In answer to Foss' Interrogatory No. 8, which asked FDS Marine to identify all expert witnesses, FDS Marine did not list Dixie Stambaugh, but instead identified her as a fact witness with knowledge of salvage and invoice issues. Foss argues that it is now prejudiced as it did not take her deposition and discovery has now closed.

FDS Marine's failure to identify Dixie Stambaugh as an expert witness in its response to Interrogatory No. 8 is harmless. FDS Marine states that it decided to call Dixie Stambaugh as an expert witness only *after* answering Interrogatory No. 8. It has since revised its interrogatory response and submitted her expert disclosure statement by the May 31, 2001 deadline. According to FDS Marine, Dixie Stambaugh is now available for a deposition and enough time remains before trial so that Foss, should it choose to depose her, will not be prejudiced.

This court concludes that Dixie Stambaugh is not an "expert" witness. She is an employee of FDS Marine and was not specially retained or employed to give an expert opinion. She was personally involved in the billing to Foss and is permitted to testify, within reasonable bounds, as to why that billing was reasonable based upon her personal knowledge and experience. Therefore, this court strikes her as an expert witness and will permit her to testify as a fact witness.

However, the admissibility of Dixie Stambaugh's proposed testimony concerning Bob Sold will be decided at a later date after the parties submit supplemental briefing.

### b. *Michael Philips*

Next, Foss seeks to exclude Michael Philips ("Philips") and strike his expert disclosure statement because FDS Marine failed to identify him as an expert in its response to Interrogatory No. 8. Furthermore, Foss argues that Philips' testimony is not based on a proper foundation and is irrelevant to the issues in this case.

With respect to Foss' first argument, this court finds no undue prejudice by the failure to earlier identify Philips in FDS Marine's response to Interrogatory No. 8. FDS Marine has since revised its interrogatory response, will make Philips available for deposition, and has submitted his expert disclosure statement in a timely fashion.

However, as Foss notes, Philips' testimony is irrelevant to the issues in this case. He opines that FDS Marine provided "satisfactory, professional quality underwater construction services in conformance with engineering requirements" on an unrelated project. He has no knowledge concerning the services provided by FDS Marine to Foss and the refloating of the DESCHUTES did not involve any engineering requirements. Thus, Foss' motion to strike Philips' testimony is granted. Should Philips' testimony become relevant at some point in the future, FDS Marine is free to re-offer his testimony.

### c. *Fred Stambaugh*

Foss moves to exclude Fred Stambaugh as an expert witness because he has no "expert" testimony to offer. Foss further seeks to limit Fred Stambaugh's testimony that the FDS Marine services provided to Foss were reasonable in quality, quantity, and price, and to prevent Fred Stambaugh from testifying about salvage issues, Bob Sold, or the alleged overloading of the ways.

For the same reasons as Dixie Stambaugh, Fred Stambaugh is not an "expert" witness, but is free to testify as a fact witness as to the reasonableness of FDS Marine's services and billings. Although this court has dismissed the salvage claim, Fred Stambaugh may testify as to the value of the DESCHUTES and the value of any salvage claim for her rescue if those values were taken into account in performing services for and/or billing Foss. However, this court reserves ruling as to testimony concerning Bob Sold and grants Foss' motion to exclude as irrelevant and unduly prejudicial any testimony concerning overloading as a cause of damage to the ways prior to the DESCHUTES. Why the ways were deteriorated is of no

consequence. The issue is the condition of the ways at the time FDS Marine commenced its repairs and how those repairs may have been impacted by the weight of the DESCHUTES.

### d. *Erin Evers*

Foss seeks to exclude Evers from testifying with the "added cloak of credibility" provided by a designation of "expert." It argues that her proposed testimony does not satisfy the requirements of FRE 702 because it does not require scientific, technical, or other specialized knowledge. If Evers is allowed to testify as an expert, Foss seeks a *Daubert* hearing to discuss her testimony.

Evers is a certified public accountant hired as an expert witness. She proposes to testify that the billing to Foss "fairly represents the labor and materials expended on the job." She arrives at this opinion after a lengthy and detailed analysis of many different factors. Certainly, she possesses and demonstrates a specialized knowledge. Furthermore, her opinion will assist the jury to understand the evidence and to determine a fact in issue, namely whether FDS Marine fairly billed Foss for its work. Thus, Evers' testimony is proper expert testimony and is relevant to issues before the fact-finder. Thus, Foss' motion to strike her testimony or have a *Daubert* hearing is denied.

### e. *Ronald Vandehey*

Foss seeks to limit the scope of testimony proposed by Ronald Vandehey ("Vandehey"), a naval architect, by excluding each of his four main opinions. This court concludes that the opinions offered by Vandehey, with one exception, are relevant, permissible, and admissible. Vandehey may not testify as to the overloading of the ways as a cause of damages to the ways prior to the DESCHUTES because such testimony is irrelevant and unduly prejudicial. He may testify as to the condition of the ways when FDS Marine began its work, but not why the ways may have been deteriorated before the DESCHUTES arrived.

### f. *Alphonso Sotres*

Lastly, Foss moves to strike all six of the opinions offered by expert witness Alphonso Sotres ("Sotres"), a professional engineer. This court finds that his opinions, by and large, are relevant and admissible. Sotres may not opine why the ways were in an allegedly deteriorated condition prior to the arrival of the DESCHUTES, as discussed above, or why Foss chose to accept the DESCHUTES repair job because such an opinion is mere speculation. However, Sotres is free to offer his opinion that the DESCHUTES was too heavy for the ways.

## II. *Foss' Motion for Extension of Time*

Foss moves for a 16–day extension of the rebuttal expert witness disclosure deadline from June 14 to July 1, 2001. It argues that it received FDS Marine's six expert disclosure statements on June 4, 2001, and has not enough time to craft proper rebuttal disclosures. FDS Marine opposes this motion, arguing that Foss has not shown good cause for a general extension of the disclosure deadline. However, FDS Marine does not oppose a short extension of time for rebuttal reports only.

As this court interprets Foss' motion, Foss seeks an extension of time only for rebuttals to FDS Marine's expert disclosures. As FDS Marine does not oppose an extension for such a limited purpose, this court will grant the motion for an extension of time for Foss' rebuttal disclosures until August 1, 2001.

However, Foss has not yet submitted an expert disclosure statement from its naval architect supporting its case in chief apparently due to some confusion caused by a change of counsel within the law firm representing Foss. Given that the trial date is still two months away, this court will allow Foss to belatedly submit that disclosure no later than July 16, 2001.